**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO: _____**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **DUKE UNIVERSITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.     Plaintiff John Doe ("Doe" or "Plaintiff"),[1] a former Ph.D. student and research assistant in the Fuqua School of Business at Defendant Duke University ("Duke"), is a survivor of a sexual assault by one of his faculty advisors. In the aftermath of this violence, he has been diagnosed with psychological trauma that has unraveled his academic career, his professional future, and his mental and physical health.

2.     Plaintiff brings this civil action under Title VII of the Civil Rights Act of 1964, 43 U.S.C.A. § 2000e-2(a), Title IX of the Education Amendments of 1972,

---

[1] Given the sensitive personal details contained in this Complaint, Plaintiff proceeds under the pseudonym John Doe and redacts identifying information in his charge of discrimination to the Equal Employment Opportunity Commission and subsequent Right to Sue. Plaintiff's charge has disclosed his identity to Defendant and as a result, their capacity to answer this Complaint is not diminished.

20 U.S.C.A. § 1681(a) ("Title IX"), and the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 for declaratory, injunctive, and monetary relief based on the discriminatory and retaliatory conduct to which Plaintiff was subjected by Duke.

3.     Duke's Title IX investigation was needlessly protracted. Instead of the 60-day timeline following receipt of the complaint that the Department of Education's Office of Civil Rights recommends, the inquiry regarding Plaintiff's allegations dragged on from the fall of 2021 to the summer of 2023, an unacceptably long window of 20 months.

4.     Duke's near two-year inaction in the face of his claims of sexual violence reflects deliberate indifference, in that Duke failed to take prompt and effective steps to investigate Plaintiff's claims, or to eliminate the threat of recurrence, and this pattern of indifference culminated in a Title IX hearing riddled with procedural deficiencies and a subsequent erroneous outcome of Duke's Title IX process.

5.     Plaintiff further contends that he was subjected by Duke officials to a series of materially adverse actions between 2021 and 2023 that reached its nadir this past August, when Plaintiff was terminated from the Ph.D. program three days after the issuance of the Title IX findings.

6. Plaintiff continually sought medically approved accommodations that Duke granted sporadically or not at all, despite clear documentation of the extent of his psychological condition.

7. Duke's inadequate, even destructive, response to Plaintiff's trauma was rooted at least partly in stereotypical gender-based norms about the nature of sexual violence. Federal civil rights laws do not recognize a hierarchy of victimization.

## **JURISDICTION**

8. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in, and the alleged unlawful acts occurred in this judicial district and division.

9. This court has jurisdiction over this action under 28 U.S.C.A. §§ 1331 and 1343.

## **PARTIES**

10. Plaintiff at the time of the events alleged in this complaint was a Ph.D. student in Business Administration at the Fuqua School of Business.

11. Plaintiff was also employed as a compensated graduate student research assistant, a mandatory element of his enrollment in the Ph.D. curriculum. As a result, Duke is subject to liability under Title VII, 42 U.S.C.A. § 2000e-3(a) which precludes retaliatory conduct against any worker who opposes unlawful employment practices.

12.    Duke, although a private university, is an entity that receives substantial federal financial assistance and is therefore subject to the provisions of Title IX and the Rehabilitation Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.    On August 25, 2023, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") that included claims of gender-based discrimination and retaliation that he advances in this lawsuit. On September 18, 2023, Plaintiff received a Notice of Right to Sue, and his Title VII claim is, therefore, timely filed. *See* Ex. A.

## STATEMENT OF FACTUAL ALLEGATIONS

14.    On April 10, 2020, Plaintiff Doe was admitted to the five-year Ph.D. program in Business Administration at Duke's Fuqua School of Business. As a condition of his enrollment, Doe was hired as a graduate student research assistant ("RA").

15.    As an RA, Doe was compensated in monthly installments and was obligated to perform research and to assist in teaching activities for specified faculty members who also acted as Doe's advisors regarding the progression of his academic studies. Research assistants at Duke are full-fledged employees and took the step of unionizing in July 2023 under the umbrella of the Service Employees International Union.

4

16.     The National Labor Relations Board since 2016 has recognized graduate students performing RA work as employees under federal law, a position reiterated in 2021 when the Board withdrew from consideration a proposed rule change that would have exempted student teaching and research assistants from the statutory definition of employees under federal labor law.

17.     In the 2020-21 academic year, an individual whom this complaint will describe as "Professor X"[2] volunteered to serve as one of Doe's advisors and de facto supervisors regarding Doe's performance of his RA duties.

18.     The working relationship between Doe and Professor X was initially cordial and consisted of the standard level of interaction and engagement on research and teaching projects.

19.     As is common in graduate school settings, members of the faculty occasionally attended social events with students. Duke, like most academic institutions, maintains a code of conduct that demands of faculty members that they maintain their professionalism and do not engage students in manners that blur the line of their relationship.

20.     As 2021 progressed, Professor X, who is male, began to exhibit signs of behavior toward Doe that are tell-tale signs of sexual "grooming", such as

---

[2] Professor X was identified in Doe's EEOC charge, and his identity has been known to Duke since a date in or about July 2021. The pseudonym is chosen randomly and does not allude to any member of the faculty at Fuqua with a first or surname beginning with "X".

inquiring about Doe's dating habits, inviting him to attend purely social events where Professor X was present, and inviting Doe to consume alcohol at these events. On occasion, Professor X asked Doe to join him at a local brewery to watch sports events.

21. On or about June 28, 2021, Doe attended an after-hours dinner with Professor X and other graduate students.

22. Professor X asked Doe to drive him home. While driving Professor X to his residence, Professor X forcibly initiated unwanted sexual contact with Doe and committed multiple acts of touching and attempted digital penetration that constitute sexual assault under North Carolina law.

23. Doe was traumatized by Professor X's assault and experienced a range of emotions associated with sexual violence, including shame, humiliation, and fear of a repeat attack. Doe, soon after the assault, obtained medical treatment and was evaluated by a sexual assault nurse examiner.

24. Doe terminated his RA assignment with Professor X in July 2021 and stopped all contact with him. Doe began to share details of the encounter with close friends, and as the summer progressed, disclosed the assault and Professor X's identity to Duke faculty officials including Fuqua Dean Bill Boulding. Doe made a written report of the incident to Duke University President Vincent Price.

25.    Duke also filed a formal police report with Duke's on-campus police department in Agust 2021. He met with Captain Greg Stotsenberg, who expressed skepticism at the seriousness of the incident and questioned Doe about his own conduct toward Professor X. According to Stotsenberg, "male-on-male assault and/or rape isn't really common or even really a thing." Doe, based on Stotsenberg's dismissiveness, elected not to file a criminal complaint.

26.    Doe sought out Duke's Counseling and Psychological Services Program in or about July 2021, and was referred to long-term trauma related therapy at Duke Student Health. Doe has subsequently been diagnosed with post-traumatic stress disorder ("PTSD"), social anxiety and depression.

27.    Duke initiated a Title IX investigation at some point in the fall of 2021 but Professor X's access to students was not limited and he was not subjected to any preventive action including suspension or administrative leave. As is standard practice, a no-contact order was issued prohibiting interaction between Doe and Professor X.

28.    During the fall of 2021, Doe's worsening psychological condition interfered with his capacity to leave his apartment or to attend class, and affected his concentration to the point where he struggled to perform assignments and to meet deadlines.

29.     In November 2021, when inquiring about Doe's emerging difficulties in the program, Ph.D. Coordinator Jack Soll was informed of Doe's allegations against Professor X. Soll is known to have a strong, mentor-like professional relationship with Professor X.

30.     Soll on three different occasions in late November and December 2021 told Doe that to maintain sufficient progress toward his studies, he needed to enroll in a particular course with Professor X, despite Stoll having full knowledge of Doe's allegations. Doe refused. Soll then warned Doe that his enrollment in the Ph.D. program was in jeopardy.

31.     On or about January 12, 2022, Doe sent correspondence to Assistant Dean of Students Anna Martin informing her of the lingering toll of the assault and requesting approval of accommodations that would enable him to modify his work and study schedule to lessen deadline pressure and to avoid crowd contact due to heightened social anxiety.

32.     Doe also submitted to Martin communications from his treating psychiatrist Dr. Jason Cho documenting his mental health diagnosis and describing the deleterious impact Doe's psychological state was having on his capacity to perform his academic work and RA. Doe simultaneously submitted the substance of his requests on Duke's Student Disability Access portal.

33. On January 26, 2022, Martin met with Doe to discuss his accommodations requests. Martin advised Doe that he had permission to refrain from large gatherings but that he was to attend Ph.D. seminars and classes by Zoom. Doe was also permitted to bring a therapeutic service dog to campus facilities including the office assigned to Doe as an RA, in order to ease his anxiety.

34. Later that same day, while attending a student seminar virtually, Doe saw Professor X at the same online virtual room that Doe was explicitly told was reserved for students. For survivors of sexual violence, even an observation of an assailant is understood to be a trigger that unleashes memories and can retraumatize.

35. Doe reported the encounter to Martin and over the next several weeks, began a series of exchanges over email over what steps Duke might take to minimize the possibility of chance interaction between Doe and Professor X. Doe was told that Duke could not effectively prevent Doe and Professor X from ever coincidentally being in the same place in person or virtually. At most, Duke could direct Professor X to provide ongoing updates of his planned schedule of public appearances so that notice could be provided to Doe.

36. On February 18, 2022, Doe met with officials from the Office of Institutional Equity ("OIE"), Dean Martin, and two faculty members in Doe's department, Dr. Grainne Fitzsimmons and Dr. Beth Posner, about the status of his accommodation requests.

37. One of the participants in the meeting, Dr. Fitzsimmons, would later serve as a character witness for Professor X at the eventual Title IX hearing in June 2023.

38. Doe was informed in the February 18 meeting he would be permitted to take an extended break from fulfilling his RA and Ph.D. course obligations until the Title IX process was completed, which Doe was told might take until the summer of 2022. Doe was given no explanation of why the investigation of a single incident would require such a prolonged period.

39. While there is no statutory timeline for Title IX investigations, the Department of Education's Office of Civil Rights has issued written guidance that 60 days is the optimal timeline for a Title IX inquiry. The reason is obvious, and especially pertinent when an institution does not place an alleged assailant on administrative leave: delay furthers the possibility that a perpetrator of sexual violence can strike again and puts more than the accuser at risk.

40. On March 28, 2022, Doe was contacted by Ph.D. program coordinator Soll and told in effect that his time-out period had been reexamined by Duke and that the expectation was that while Doe's end of academic year writing and examination requirements would be delayed, Doe would need to re-engage his RA work and Ph.D. obligations.

41.     Soll presented Doe with a timeline for resuming assignments and coursework, and Soll advised Doe that he would conduct a monthly progress session with Soll. This in its own right is extremely unusual within Duke's Ph.D. culture. Program coordinators ordinarily meet with students for one purpose, an end of academic year annual progress review. Moreover, Soll's attempt to pressure Doe to enroll in a class taught by Professor X, despite having knowledge of Doe's allegations and the no contact order, had damaged Doe's trust of Soll. Duke could have, but did not, assign a faculty member to conduct these monitoring sessions.

42.     Doe made repeated complaints to Dean Martin and OIE about the reversal of course and received no official response, other than an inaccurate claim that the February meeting was merely a discussion of options with no resolution.

43.     On April 19, 2022, Soll emailed Doe that if "you intend to continue in the program", Doe would need to commit to reintegrating himself into the Ph.D. program immediately by signing his consent to the terms of the proposed conditions of return in the March 28th letter.

44.     On May 6, 2022, Doe was notified by an email from the Ph.D. department that his health insurance was in danger of being canceled, on the grounds that he was not performing his RA responsibilities. This threat was deeply triggering to Doe, in that it meant he might lose access to his therapy sessions and mental health counseling.

45.    In June or July 2022, Doe and his treating psychiatrist submitted a detailed proposal that they labeled "Academic and Trauma Recovery plan", which entailed various options for Doe to re-engage the Ph.D. program, including a reentry to the program with standing as a second year student and a graduated resumption of his duties under a monitored timeline with identifiable metrics in place. The Academic and Trauma Recovery plan was drawn from established research about adjustment to normalcy after a psychological trauma.

46.    As the summer of 2022 progressed, Doe continued to experience resistance from Duke administrators about the pace and timing of his return to the Ph.D. curriculum. Soll sent Doe a slightly modified version of the March 2022 return plan that reflected none of the major concepts in the Trauma and Recovery Plan Doe had submitted.

47.    In August 2022, Debu Purohit, the Senior Associate Dean for faculty, rescinded the accommodation permitting Doe to bring a service animal to campus settings.

48.    During the fall of 2022, Doe began to periodically attend on-campus events and to resume aspects of his scholarship including participation in certain seminar settings.

49.    Duke's Title IX investigation, meanwhile, continued to lag. The summer of 2022 passed with no hearing and Duke notified Doe that the timetable

for investigation would be delayed until November 2022, at least the third inexplicable extension of the deadline for completion. Eventually, the investigation would be delayed for another seven months.

50.     In January 2023, Doe experienced another encounter with Professor X, this time at a campus lecture by a visiting speaker. In direct violation of the no contact order, Professor X deliberately sat behind Doe; the act of hearing Professor X's voice caused Doe to suffer an instant panic attack. Several Duke faculty admonished Doe for "being dramatic" and causing a scene and initially refused to call EMS responders, at first exacerbating Doe's distress by calling campus security. Only after a friend at the event made a 911 call did Doe receive medical assistance.

51.     Duke responded to this episode by directing Doe to refrain from attending seminar events in person and to revert exclusively to Zoom participation; Doe was further advised not to attend student luncheons or visiting speaker events. On February 14, 2023, Dean Peng Sun sent Doe correspondence suggesting that Doe take a leave of absence from Duke.

52.     While a leave of absence had been sought by Doe a year earlier, his gradual reimmersion in campus activities during the fall of 2022 had started to yield major dividends for Doe's recovery. Duke's overreaction to Doe's setback had a punitive feel and had the effect of re-isolating him.

53.     In the aftermath of the January 2023 episode, Doe began to experience other forms of undermining and derogatory treatment. One of the Ph.D. program faculty members who witnessed Doe's panic attack began leaving him out of notices of campus offering and curriculum updates. Doe learned that an active rumor campaign had emerged among faculty and students to the effect that he was "unstable" and needed to be avoided, and that Doe was maliciously attempting to damage Professor X's reputation.

54.     In the spring of 2023, Doe was precluded from participating in the Ph.D. prospective student interview process, which normally matches current Ph.D. students with applicants exploring matriculation at Duke.

55.     In April 2023, Doe was informed that he was no longer authorized to bring his service animal to campus facilities at Fuqua.

56.     In early May 2023, Dean John Klingensmith notified Doe that he needed to prepare to take the end of second year qualifying exam. During the lengthy dialogue between Doe and campus administrators that began in January 2022, it had been implicit that Doe would not be expected to submit to testing until the completion of the Title IX process; indeed, even Soll's iteration of Doe's reentry expectations presumed that testing would be postponed.

57. Klingensmith's notice came within one month of the long delayed Title IX hearing date in June 2023, further exacerbating Doe's levels of stress and apprehension.

58. During June 6 and June 7, 2023, Duke convened a formal Title IX hearing. Doe offered testimony regarding the June 28, 2021 events.

59. At the same time, Doe was advised that the panel would not hear evidence of retaliatory conduct on the part of Duke administrators. Instead, the panel would focus only on the discrete question of the assault: a narrow focus that conflicts with the scope of Title IX law and that renders inexplicable the protracted two-year delay in the investigation.

60. In addition, the hearing officer incorrectly limited the scope of testimony by Doe's mental health counselor, Christina Sapine-Iezzi, who attempted to offer expert conclusions about a central fact issue in the complaint: whether Doe's failure to immediately report Professor X and his limited but continued professional interactions with Professor X for a month after June 28, 2021 impeached Doe's credibility. Failing to weigh such evidence undoubtedly prejudiced the consideration of Doe's complaint.

61. In contrast, the hearing officer permitted four witnesses to offer broad character-based testimony vouching for Professor X. Such testimony is ordinarily not relevant in fact finding in the civil or Title IX context, except in the limited

context of propensity for honesty, and the hearing officer erred in receiving this evidence.

62. Nor surprisingly, given the aforementioned procedural defects in the Title IX hearing, on July 29, 2023, Duke issued its findings that it had insufficient evidence to conclude that a Title IX violation occurred.

63. Upon information and belief, a limited number of the Title IX allegations received and investigated by Duke involve same sex encounters between men: a Duke police captain said as much to Doe, as noted in ⁋ 25.

64. Duke evidently does not maintain publicly available data regarding student allegations of sexual assault by faculty members, but its 2020-21 Student Sexual Misconduct Annual Report exemplifies a focus on predatory behavior directed by men toward women. The report includes a listing of student focused services aimed at combating and preventing gender violence: one specifically identifies resources for women of color, another describes a training course for counselors and therapists that explicitly targets "norms that perpetuate violence" such as "oppression and objectification of women" and "violence against women in a private matter." There are no targeted offerings for the unique dynamic of male same sex violence.

65. Two days after the issuance of the Title IX findings, on July 31, 2023, the Medical Director for Duke Student Health informed Doe that his primary care

provider of two years, Dr. Cleo Estrera, would no longer be assigned to his health care team. Estrera has testified on Doe's behalf at the June 6-7 hearing.

66.     On August 1, 2023, Doe was officially terminated from the Ph.D. program, simultaneously ending his academic enrollment and his RA status. Doe's termination has also deprived him of medical insurance during a time of continuing emotional trauma.

## CAUSES OF ACTION

## COUNT I

**(Retaliatory Hostile Environment, in violation of Title VII, 42 U.S.C.A. § 2000e-2(a))**

67.     Plaintiff Doe re-alleges the factual allegations in this complaint by reference as if fully set forth herein.

68.     During the course of his employment as a graduate student research assistant, Plaintiff engaged in protected activity by reporting to Duke administrators that he was sexually assaulted by one of his direct supervisors, a full time faculty member at Duke University, and by pursuing administrative remedies provided by Title IX of the Education Amendments to the Civil Rights Act of 1964 that protect employees of academic institutions who encounter sexual misconduct from supervisors during the course of their employment relationship.

17

69. As a direct result of Doe's protected activity, he was subjected to ongoing retaliatory conduct that included persistent pressure by Duke administrators to resume work obligations despite a medical diagnosis that he required significant readjustment and accommodation; and eventual termination from his duties as a research assistant immediately after the conclusion of the Title IX process.

70. The retaliatory conduct Doe experienced was unwelcome and was sufficiently severe and pervasive enough that it would have dissuaded a reasonable employee from making a charge of discrimination.

71. Duke's retaliatory conduct, as perpetrated by various administrators in the Ph.D. program at the Fuqua School of Business, constituted a retaliatory hostile environment.

72. The aforementioned retaliatory hostile environment has caused Doe to suffer emotional distress, humiliation, and mental anguish; culminating in the termination of his employment, which has deprived of compensation and medical benefits.

73. Duke's infliction of a retaliatory hostile environment was done with willful and reckless indifference to Doe's statutory rights, entitling him to punitive damages.

///

///

## COUNT II

**(Deliberate Indifference to Sex Discrimination in Violation of Title IX, 20 U.S.C.A. § 1681(a))**

74.     Plaintiff Doe re-alleges the factual allegations in this complaint by reference as if fully set forth herein.

75.     Title IX provides in relevant part: "No person in the United States shall, on the basis of sex….be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C.A. § 1681(a).

76.     A recipient has engaged in sex discrimination under Title IX when it manifests deliberate indifference to discriminatory conduct, of which it has knowledge, that is directed at a student.

77.     Defendant Duke University acted in a deliberately indifferent manner by failing to promptly investigate Doe's claims of sexual assault by a Duke faculty member, resulting in a nearly two-year Title IX investigative process. The unwarranted delay subjected Doe to a risk of repeat violence, amounting to a failure to remedy the discriminatory conduct perpetrated against Doe.

## COUNT III

**(Retaliation in Violation of Title IX)**

78.     Plaintiff Doe re-alleges the factual allegations in this complaint by reference as if fully set forth herein.

79.     During the course of his enrollment as a Ph.D. student in the Fuqua Business School at Duke University, Plaintiff engaged in protected activity by reporting to Duke administrators that he was sexually assaulted by a member of the faculty at Duke University and by pursuing administrative remedies provided by Title IX of the Education Amendments to the Civil Rights Act of 1964 that protects students at academic institutions from acts of sexual harassment or violence.

80.     As a result of Doe's protected activity, he was subjected to ongoing retaliatory conduct that included persistent pressure by Duke administrators to resume work obligations despite a medical diagnosis that he required significant readjustment and accommodation; and eventual termination from the Ph.D. program immediately after the conclusion of the Title IX process.

81.     Duke's unlawful retaliatory behavior has caused Doe to suffer economic losses including the loss of the opportunity to obtain a Ph.D. from the nation's most prestigious business school, which will continue to limit his earning potential.

## COUNT IV

**(Erroneous Outcome Discrimination, in Violation of Title IX)**

82.     Plaintiff Doe re-alleges the factual allegations in this complaint by reference as if fully set forth herein.

83.     During his enrollment at Duke University, Plaintiff Doe initiated a claim of Title IX discrimination based on his assault by a male faculty member who served as one of Doe's academic advisors and supervised Doe's work as a graduate research assistant.

84.     The disciplinary hearing regarding Plaintiff Doe's Title IX was procedurally flawed in the following manner: (1) an extended and unwarranted delay in the Title IX investigative process; (2) the introduction of ordinarily inadmissible character evidence on behalf of the accused respondent; (3) the refusal to admit qualified expert testimony regarding a material issue in dispute; (4) a failure to permit evidence of a cognizable claim of retaliation under Title IX.

85.      The described procedural flaws directly contributed to an erroneous finding that Doe's Title IX claim could not be substantiated.

86.     Gender bias was at least a motivating factor in the erroneous outcome Doe received, in that there is circumstantial evidence that Duke prioritizes the prompt enforcement of claims by women against men. For example, the institutional resources Duke provides for survivors of sexual trauma are in notable ways not gender neutral, and disproportionately identify women as survivors. A ranking law enforcement officer at Duke pointedly minimized the prevalence of male sexual assaults of other men.

Case 1:23-cv-01099   Document 1   Filed 12/15/23   Page 21 of 26

87.     It can readily be inferred that Duke's uncharacteristically slow Title IX investigation of Doe's claim was at least part a result of an internal skepticism that would have been exceedingly unlikely in the event a female student lodged a complaint of sexual assault against a male faculty member.

## COUNT V

**(Disability Discrimination in Violation of the Rehabilitation Act, 29 U.S.C.A. § 794(a))**

88.     Plaintiff Doe re-alleges the factual allegations in this complaint by reference as if fully set forth herein.

89.     Plaintiff Doe is an individual with disabilities in that he suffers from PTSD, depression, and anxiety, all conditions of which senior Duke administrators were made aware no later than the early 2022 time frame.

90.     Duke University is an entity that received federal financial assistance.

91.     Doe was subjected to discrimination based on his disability in that Duke administrators denied Doe's request for specific reasonable medical accommodations including a clinically recommended trauma recovery program, and continued access to a trauma support animal.

92.     Duke's failure to grant Doe's reasonable accommodations jeopardized his academic standing, which contributed to his termination from the Ph.D. Program, depriving him of compensation, financial assistance and medical benefits.

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits;

B. Compensatory, non-economic damages under Title VII to the extent allowed by law;

C. Punitive damages under Title VII;

D. Reinstatement to the Ph.D. program at Duke University's Fuqua School of Business;

E. Attorneys' fees and costs of litigation;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such other equitable and monetary relief as the Court deems just and proper.

///

///

///

Respectfully submitted, the 15th day of December, 2023.

**HKM Employment Attorneys LLP**

*s/Sunny Panyanouvong-Rubeck*
Sunny Panyanouvong-Rubeck
N.C. Bar No. 39966
1001 Elizabeth Avenue, Suite 1B
Charlotte, NC 28204
980-734-3851
spanyanouvong-rubeck@hkm.com

*s/Artur Davis*
Artur Davis[3]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
205-881-0935
adavis@hkm.com

---

[3] Mr. Davis is admitted to practice law in Alabama and the District of Columbia and will promptly file a motion for admission *pro hac vice* pursuant to the Local Rules of the Middle District of North Carolina.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/18/2023

**To:** ████████████
████████████
Durham, NC 27702

Charge No: 430-2023-03908

EEOC Representative and email:   NANCY WOLF
Investigator
nancy.wolf@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 430-2023-03908.

On behalf of the Commission,

For  Elizabeth A. Rader
District Director

## Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/18/2023

**To:** ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮
Durham, NC 27702

Charge No: 430-2023-03908

EEOC Representative and email:   NANCY WOLF
Investigator
nancy.wolf@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 430-2023-03908.

On behalf of the Commission,

For  Elizabeth A. Rader
District Director

# Exhibit A